IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-627-RJ

CHRISTIE MOORE,

    Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-22, -26] pursuant to Fed. R. Civ. P. 12(c). Claimant Christie Moore ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for Supplemental Security Income ("SSI") payments. Claimant filed a response to Defendant's motion, [DE-28], the time for further responsive briefing has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded for further proceedings consistent with this order.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, Disability Insurance Benefits, and SSI on April 6, 2018, alleging disability beginning January 7, 2012. (R. 99, 355–64). Her claims were denied initially and upon reconsideration. (R. 99, 185–253). A hearing before the Administrative Law Judge ("ALJ") was held on February 10, 2020, at which Claimant,

represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 116–54). At the hearing, Claimant withdrew her request for hearing on the Title II claim, and the ALJ dismissed that claim. (R. 99, 119–21). On March 25, 2020, the ALJ issued a decision denying Claimant's request for benefits. (R. 96–115). On September 24, 2020, the Appeals Council denied Claimant's request for review. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her

findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges (1) the ALJ erred by failing to perform a function-by-function assessment of Claimant's ability to walk, and failing to adequately analyze and account for Claimant's nonexertional limitations due to chronic pain and fatigue, and (2) the structure of the

3

Social Security Administration is unconstitutional. Pl.'s Mem. [DE-23] at 10–16.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since January 7, 2012, the alleged onset date. (R. 101). Next, the ALJ determined Claimant had the severe impairments of rheumatoid arthritis, fibromyalgia, degenerative disc disease, COPD, and obesity, and the nonsevere impairments of personality disorder and learning disorder. (R. 101–02). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in mild limitations in understanding, remembering, or applying information; adapting or managing oneself; and concentrating, persisting, or maintaining pace, and no limitation in interacting with others. (R. 102). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 103).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations:

> [S]he can occasionally climb, stoop, kneel, and crouch. She can occasionally push/pull with the lower extremities. She requires the flexibility to alternate between sitting, standing, and walking within a 30 minute timeframe without leaving work tasks. She can have occasional exposure to extreme cold, and fumes, odors, dusts, gasses, poor ventilation, and hazards.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

4

(R. 103–07). In making this assessment, the ALJ found Claimant's statements about her limitations to be not entirely consistent with the medical evidence and other evidence in the record. (R. 104). At step four, the ALJ concluded Claimant was unable to perform her past relevant work as a special tester and an administrative clerk. (R. 107). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 108–09).

## V. DISCUSSION

### A. The RFC Assessment

Claimant contends the ALJ erred in formulating the RFC by failing to perform a function-by-function assessment of her ability to walk and failing to adequately analyze and account for her nonexertional limitations due to chronic pain and fatigue. Pl.'s Mem. [DE-23] at 10–15. Defendant contends the ALJ properly considered Claimant's ability to walk and her nonexertional limitations, and the RFC assessment is supported by substantial evidence. Def.'s Mem. [DE-27] at 21–27.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The

5

ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Therefore, despite an ALJ's failure to conduct the function-by-function analysis, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review.

Claimant suffers from rheumatoid arthritis, fibromyalgia, and degenerative disc disease, as well as COPD and obesity, and testified that due to her pain she takes multiple medications, including morphine, gabapentin, Flexeril, and Percocet, which make her tired, groggy, and lethargic, and she lies down for approximately ten hours a day. (R. 135–36). Claimant's pain medication reduces her pain to a daily average of seven on a scale of zero to ten, her pain is constant, and when her pain is at its worst she cannot get out of bed or walk. (R. 137–38). Claimant's pain interferes with her ability to attend to her personal needs, and she experiences shortness of breath and difficulty walking thirty yards to her mailbox. (R. 141). In an SSA function report dated June 12, 2018, Claimant indicated she cannot stand or sit for any length of time and can walk twenty

five to fifty feet before needing to stop and rest due to pain in her back and joints and difficulty breathing. (R. 405–12); *see also* June 4, 2019 Function Report (R. 433–40) (indicating Claimant engaged in very limited activity). The treatment notes also reflect Claimant's complaints of pain and difficulty with prolonged walking and standing, as well as some gait disturbance. (R. 1473, 1642, 1709, 1916, 1928, 1939, 1983, 1990, 2004–05).

As for the objective evidence, initial imaging in September 2012 demonstrated degenerative disc disease at the right side of L5-S1 with broad-based posterior central disc bulge and right paracentral disk encroaching on existing nerve root causing narrowing of the right foramen. (R. 1631). Imaging in November 2014 demonstrated a large disc bulge/disc herniation at L5-S1, neural foraminal narrowing on the left side at L4-L5, and a large disc bulge/herniation on the right side at L5-S1 bed that does appear to impinge on the exiting nerve root. (R. 726). Imaging in April 2019 demonstrated the right paracentral L5-SI disc herniation was stable and unchanged from 2014, but there was progression in the degree of disc herniation on the left, effacing the left exiting nerve root canal, and the L3-L4 disc demonstrated a mild stenotic development of the left lateral recess angle with associated disc bulging. (R. 1856).

The ALJ determined Claimant was capable of light work, which typically involves "a good deal of walking or standing," 20 C.F.R. § 416.967(b), with the flexibility to alternate between sitting, standing, and walking within a thirty minute time frame without leaving work tasks. (R. 103). Defendant points out that the ALJ considered the imaging, treatment records, and medical opinions in formulating the RFC, and the ALJ discussed the waxing and waning of Claimant's symptoms, as well as physical examinations that at times indicated swelling, tenderness to palpation, and painful range of motion and at other times examinations were negative on all counts. Def.'s Mem. [DE-27] at 21–24. However, the ALJ did not perform a function-by-function analysis

7

of Claimant's ability to walk, as required by SSR 96-8p, (R. 103–07), and the court cannot trace the ALJ's reasoning from the RFC assessment.

After summarizing the medical evidence, the ALJ concluded as follows:

> The examinations done by her medical providers, as described above, range from finding some swelling, tenderness to palpation, and pain on range of motion in various areas to some exams which were negative on all counts. This fluctuation is likely consistent with the symptomology of the various impairments, but in no case represent findings that would be disabling. The reduction to the less than light exertional level set forth in the above RFC would accommodate this range of findings. The evidence is not consistent with any further reduction.

(R. 106). It is not apparent from the ALJ's summary of the medical evidence and the above conclusion how the ALJ assessed Claimant's ability to walk. The ALJ erred by reviewing the evidence and stating a conclusion without the requisite "logical explanation." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The fact that Claimant's impairments resulted in fluctuating symptoms does not explain how the ALJ determined the findings in the medical record would not be disabling. This is particularly troublesome due to Claimant's fibromyalgia diagnosis, where "SSR 12-2p recognizes that symptoms of [fibromyalgia] can wax and wane so that a person may have bad days and good days." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 101 (4th Cir. 2020) (internal quotation marks omitted) (citing 2012 WL 3104869, at *6 (July 25, 2012)). Moreover, notably absent from the ALJ's RFC assessment is *any* discussion of Claimant's testimony from the administrative hearing, (R. 103–07), and the ALJ is required to consider a claimant's statements about her symptoms, 20 C.F.R. § 416.929(a); S.S.R. 16-3p. Here, as in *Dowling v. Comm'r of Soc. Sec.*, the ALJ did not properly assess how Claimant's alleged difficulty walking impacted her ability to perform a reduced range of light work, where Claimant's ability to walk was a contested function. 986 F.3d 377, 388–89 (4th Cir. 2021).

Likewise, the ALJ's summary of the treatment notes and conclusion lack the requisite

8

explanation of how Claimant's chronic pain and fatigue impacted her ability to perform a reduced range of light work, where the ALJ failed to address Claimant's testimony regarding her limitations. *See Mascio*, 780 F.3d at 640 (finding error where the ALJ failed to provide a proper explanation of how he decided which of the claimant's statements to believe and which to discredit). Defendant points to statements in the record indicating Claimant's fatigue was mild and her activities of daily living were only mildly impaired. Def.'s Mem. [DE-27] at 25–26. However, on other occasions Claimant reported daily fatigue and poor sleep, (R. 1910, 1974, 1978, 2005), and in the March 2019 treatment note indicating mild fatigue and mildly impaired ADLs, it also stated that Claimant had increased fatigue and bilateral foot pain that caused difficulty walking and difficulty standing for showers, (R. 1983). *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.") (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). Finally, as the Fourth Circuit explained in *Arakas*,

> A claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with her ability to carry out daily activities. As one of our sister circuits aptly observed, "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson*, 671 F.3d at 647. Furthermore, as we emphasized in *Lewis*, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Lewis*, 858 F.3d at 868 n.3 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Being able to live independently and participate in the everyday activities of life empowers people with disabilities and promotes their equal dignity. In pursuing those ends, disability claimants should not have to risk a denial of Social Security benefits.

983 F.3d at 101. The reliance on Claimant's ability to drive, do chores, shop, use a computer, and visit her mother, Def.'s Mem. [DE-27] at 26 (citing R. 102, 105–06, 406–10, 434–39), does not

9

reflect consideration of the limited degree to which Claimant stated she performed such activities. (R. 406–10, 434–39). While it is appropriate for the ALJ to take into account a claimant's daily activities, the ALJ must also consider the extent to which a claimant performs these activities. *Woods v. Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018).

Accordingly, remand is required for the ALJ to conduct a proper RFC analysis.

## B. The Constitutional Argument

Claimant contends that the structure of the SSA is unconstitutional because the Commissioner is the singular head of the Agency, serves a six-year term, and cannot be removed by the President except for cause, which Claimant argues violates the separation of powers and deprived Claimant of a valid administrative adjudicatory process. Pl.'s Mem. [DE-23] at 15–16 (citing *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020)). Defendant concedes that the removal restriction violates the separation of powers but contends that Claimant is entitled to no relief because she cannot show the required nexus between the removal restriction and the denial of her benefits claim, any constitutional violation constituted harmless error, rehearing is unwarranted under the de facto officer doctrine and the rule of necessity, and prudential considerations bar her request for rehearing. Def.'s Mem. [DE-27] at 5–21 (citing *Collins v. Yellin*, 141 S. Ct. 1761 (2021)); *see also, e. g.*, *Stephens v. Comm'r of Soc. Sec.*, 1:20-CV-00320-WCM, 2022 WL 628540 (W.D.N.C. Mar. 3, 2022) (citing *Helms v. Comm'r of Sec. Sec.*, No. 3:20-cv-589-MOC, 2021 WL 5710096 (W.D.N.C. Dec. 1, 2021)); *Stubbs v. Kijakazi*, No. 6:20-3606-MGL-KFM, 2022 WL 557479 (D.S.C. Feb. 24, 2022); *Pepper v. Kijakazi*, No. 6:20-CV-4159-CMC, 2022 WL 391577 (D.S.C. Feb. 9, 2022); *Hutchens v. Comm'r of Soc. Sec.*, No. 1:20-CV-1124, 2021 WL 5834409, at *13 (M.D.N.C. Dec. 9, 2021) (citing *Lisa Y., v. Comm'r of Soc. Sec.*, No. C21-5207-BAT, — F. Supp.3d —, 2021 WL 5177363 (W.D. Wash. November 8, 2021)),

10

*adopted* Jan. 5, 2022; *Osborne v. Kijakazi*, No. 5:21-cv-9-MOC, 2021 WL 5890668, at *4 (W.D.N.C. December 13, 2021) (failure to show nexus between unconstitutional removal restriction and denial of disability benefits application is no basis for remand and was expressly rejected in *Collins*); *Brian S. L. v. Kijakazi*, No. 1:21cv00423 (AJT/JFA), 2021 WL 6774946 (E.D.Va. Dec. 10, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397 (W.D.N.C. Oct. 27, 2021).

However, given that remand is required for reconsideration of the RFC analysis, the court declines to reach this constitutional question here. *See Norfolk S. Ry Co. v. City of Alexandria*, 608 F.3d 150, 156–57 (4th Cir. 2010) ("[T]he principle of constitutional avoidance set forth in *Ashwander v. Tennessee Valley Authority* requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary.") (citing *Ashwander*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("It is not the habit of the Court to decide questions of a Constitutional nature unless absolutely necessary to a decision of the case." (internal quotation marks omitted))); *but see Lisa Y.*, 2021 WL 5177363, at *1 (concluding that "[w]hile the ALJ's erroneous decision to discount Dr. Gool's opinion provides the Court a basis to avoid addressing the separation of powers argument, the Court also addresses the Constitutional issue because it is an important and recurring issue that has been raised in numerous other cases and should thus be resolved").

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-22] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-26] is DENIED, and this case is remanded to the Commissioner, pursuant to sentence four of § 405(g), for further

11

proceedings consistent with this order.

SO ORDERED, this the 21st day of March 2022.

_____
Robert B. Jones, Jr.
United States Magistrate Judge